**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS J. WOOD, JR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 05 C 2577 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | Magistrate Judge Nan R. Nolan |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas J. Wood, Jr. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for summary judgment.[1] For the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendant's Motion for Summary Judgment [#16] is granted.

## PROCEDURAL HISTORY

On July 28, 2003, Wood applied for DIB alleging that he became disabled as of March 12, 2001, due to pain in both of his ankles, right knee pain, anxiety, and depression. (Tr. 113-15, 161, 190, 194). Wood's application for benefits was initially denied on October 23, 2003. (Tr. 27-30). On February 11, 2004, Wood's request for reconsideration was also denied. (Tr. 31-35). Wood then filed a timely request for an administrative hearing. On November 18, 2004, Wood appeared with counsel and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 11, 398-458).

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.

A Medical Expert ("ME") and Vocational Expert ("VE") also testified at the administrative hearing. (Tr. 398-458).

On December 8, 2004, the ALJ issued his decision finding that Wood was not disabled. (Tr. 12-22). Wood then filed a request for review of the ALJ's decision. On April 15, 2005, the Appeals Council denied Wood's request for review making the ALJ's decision the final decision of the Commissioner. (Tr. 7-9). Pursuant to 42 U.S.C. § 405(g), Wood initiated this civil action for judicial review of the Commissioner's final decision.

## BACKGROUND FACTS

### I. RELEVANT MEDICAL EVIDENCE[2]

On August 12, 2003, Dr. Gnap, Wood's family physician, reported to the Bureau of Disability Determination Services that Wood had been depressed for over one year as a result of his physical condition. (Tr. 296). Dr. Gnap indicated that Wood was clinically depressed and taking Xanax.[3] (Tr. 296). Dr. Gnap explained that Wood's depression was more situational, and at that time, he had not seen a psychiatrist. (Tr. 296). Dr. Gnap reported that Wood had diminished concentration, insomnia, and lacked energy. (Tr. 296).[4]

Wood underwent a consultative psychological evaluation with Dr. Alan W. Jacobs, Ph.D. on September 10, 2003. (Tr. 303-05). At that time, Wood reported that he was very depressed and

---

[2] Wood does not challenge the ALJ's findings regarding his physical impairments and limitations. Therefore, the Court focuses on the evidence concerning Wood's mental impairments.

[3] Xanax is a "tranquilizer used in the short-term relief of symptoms of anxiety or the treatment of anxiety disorders." *The PDR Family Guide to Prescription Drugs* ("*PDR Family Guide*") 752 (9th ed. 2002).

[4] Dr. Gnap treated Wood from July 2001 to October 2004. (Tr. 353-69). From July 2003 to July 2004, Dr. Gnap prescribed Xanax for Wood. (Tr. 355-63).

2

had been depressed his whole life, but now his depression was much worse. (Tr. 303-04). He indicated that he had seen a psychiatrist three times, but he decided to stopped going to the psychiatrist. Instead, he tried to talk to his family physician about his depression. (Tr. 304). Wood stated that he took Effexor,[5] Xanax, Vicodin,[6] and Ibuprofen,[7] and used an inhaler and nebulizer for his asthma. (Tr. 304).

Dr. Jacobs noted that Wood exhibited a moderately tense and anxious mood, and spoke rapidly. (Tr. 305). He assessed Wood as being an individual who had suffered with chronic feelings of inadequacy, diminished self-concept, and considerable personal insecurity. (Tr. 305). Dr. Jacobs found Wood's long-term memory fair and his short-term memory mildly impaired. (Tr. 305). He noted that Wood exhibited very mild looseness of association which appeared to be anxiety-related. (Tr. 305). Dr. Jacobs diagnosed Wood with a generalized anxiety disorder, a history of panic disorder without agoraphobia, a history of adjustment disorder with depressed mood, and a personality disorder not otherwise specified. (Tr. 305).

On October 14, 2003, Dr. Terry A. Travis, M.D., a state agency physician, reviewed Wood's medical record and completed a Mental Residual Functional Capacity Assessment form. (Tr. 306-08). Dr. Travis opined that Wood was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and in his ability to perform at a consistent pace without an unreasonable number and length of rest periods.

---

[5] Effexor is "prescribed for the treatment of depression–that is, a continuing depression that interferes with daily functioning." *PDR Family Guide*, at 241.

[6] Vicodin is a narcotic pain medication prescribed to treat moderate to moderately severe pain. *PDR Family Guide*, at 732.

[7] Ibuprofen is nonsteroidal anti-inflammatory medication used for the relief of mild to moderate pain. *PDR Family Guide*, at 324, 431.

3

(Tr. 307). He further indicated that Wood was not significantly limited or there was no evidence of limitation in any of the other categories within the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 306-08).

Wood underwent mental health treatment at Oak Forest Hospital from March 8, 2004 to October 13, 2004. (Tr. 370-93). Wood was treated by a psychologist and his treatment consisted of individual psychotherapy sessions as well as medication prescribed by a psychiatrist. (Tr. 370-93). He was diagnosed as having a generalized anxiety disorder with diminished social and occupational functioning. (Tr. 372-78, 380-88, 391). Throughout the clinical progress notes, the psychologist indicated that Wood had difficulty concentrating, experienced ruminations, and/or depressive cognition. (Tr. 372-78, 380-88, 391). Wood was prescribed Paxil[8] and Seroquel[9] for his mental conditions. (Tr. 370). Wood underwent testing to rule out a medical cause for his continued anxiety. (Tr. 372).

## II. WOOD'S TESTIMONY

Wood was born on August 28, 1970. (Tr. 19). He was thirty-four years old at the time of the hearing. Wood is married and has four children. (Tr. 406-07). He lives with his family in a two-bedroom apartment. (Tr. 406). Wood received his graduate equivalency diploma when he was twenty-one years old. (Tr. 407).

Wood testified that he has had panic attacks all of his life and had just started getting

---

[8] Paxil is "prescribed for a serious, continuing depression that interferes with [an individual's] ability to function." *PDR Family Guide*, at 499. Paxil is also prescribed to treat panic disorders and social anxiety disorders. *Id*. at 500.

[9] Seroquel is an antipsychotic medication used to "combat[] the symptoms of schizophrenia, a mental disorder marked by delusions, hallucinations, disrupted thinking, and loss of contact with reality." *PDR Family Guide*, at 614.

4

treatment for them because they have gotten more severe as he had gotten older. (Tr. 408, 413). He stated that he had a history of ditching school when he was a child because he was just too scared and panicky to attend. (Tr. 408). Wood indicated that he was always worried about what everyone thought of him and felt like people were looking at him. (Tr. 408). He said that he is very nervous and scared that everyone is out to get him. (Tr. 412). Wood also stated that he had a problem with his hands because he thought they were too small. (Tr. 408).

Wood testified that when he was a kid he worked in a nursery. (Tr. 408). As an adult, he has worked as a truck driver both loading and unloading trucks. (Tr. 409, 412). He stated that when he was a truck driver, he had jumped out of his truck when he could not find his way around and banged on people's windows, in a panicked state, to get help with directions when he could not find a particular address. (Tr. 412). Wood indicated that he never told anyone at work that he had panic attacks because he was too embarrassed. (Tr. 417). He also testified that he was taking Paxil and Seroquel to help him with his panic attacks. (Tr. 412).

Wood stated that during some of his panic attacks he felt as if he could not breathe and as if he were dying, and his wife had to call 911 a couple of times when he was having these attacks. (Tr. 415, 422). He indicated that his worst panic attacks were in the morning before he went to work and often times he would debate over whether he should go to work. (Tr. 412, 415). Wood testified that he had a panic attack before coming to the hearing and debated over whether or not he should attend. (Tr. 415). When he had a panic attack, Wood stated that he would "[j]ust go back in [his] room" and "kind of hide." (Tr. 415). He indicated that during these attacks, he almost could not function and it was hard for him to think or concentrate. (Tr. 415). Wood testified that his medication would take the "edge off a little bit," but he would still shake and feel nervous. (Tr. 415-

5

16, 422). He stated that he has panic attacks everyday and an attack could be so severe that he might need to go to the hospital or call his physician or psychologist. (Tr. 421-22).

Wood testified that he does not have any friends and he stays in the house and does not go out. (Tr. 413, 417). He indicated that he sometimes sits in his room for a week at a time if he is really depressed and will not open the door or come out of his room for anyone. (Tr. 413). Wood stated that he was afraid of being judged by others and afraid of failing. (Tr. 414). He further testified that he often cried about his life and ruminated about unpleasant events in his life. (Tr. 431-33).

**III. MEDICAL EXPERT'S TESTIMONY**

Dr. Darrell Snyder, Ph.D., a psychologist, testified as medical expert at the administrative hearing. (Tr. 423-28, 444-45, 450). After a review of the relevant medical evidence, Dr. Snyder stated that Wood had a generalized anxiety disorder which included elements of panic and social phobia as well as concern about what others thought. (Tr. 423-24). He indicated that Wood was mildly limited in performing daily activities of living because he was able to function in his household, moderately limited in social functioning and concentration, persistence, or pace, and had reported episodes of decompensation (i.e., those instances reported by Wood of becoming lost while trying to find a particular address). (Tr. 424, 445). Dr. Snyder opined that Wood could perform simple, repetitive work with no more than superficial contact with the general public. (Tr. 424-25). When questioned by Wood's attorney, Dr. Snyder stated that Wood would have some difficulty in sustaining employment, especially across the week. (Tr. 426-27). He stated that Wood's concentration difficulties were noted throughout Wood's outpatient psychotherapy progress notes and that concentration difficulty was a common feature of generalized anxiety. (Tr. 428).

## IV. VOCATIONAL EXPERT'S TESTIMONY

Mr. Thomas Dunleavy, a VE, testified at the administrative hearing. (Tr. 438-442, 446, 452). Mr. Dunleavy initially stated that Wood's previous work as a dock worker constituted unskilled work and his primary occupation as a truck driver constituted semi-skilled work. Both of these occupations are at the heavy exertional-level. (Tr. 439). The ALJ then posed a hypothetical question to Mr. Dunleavy and asked him whether there were any jobs available for a hypothetical individual who can stand for no more than two hours out of an eight-hour day, can lift up to fifty pounds at a time, but only twenty-five pounds repetitively, cannot have concentrated exposure to noxious fumes, odors, respiratory irritants or extremes of cold, and is limited to simple, repetitive work which requires no more than superficial contact with the general public. (Tr. 439-40). Mr. Dunleavy responded that Wood would not be able to return to any of his past relevant work and would be limited to sedentary work. (Tr. 440).

The ALJ then varied the hypothetical question by changing the exertional level from medium to light with sedentary positional and the hypothetical individual only being able to lift up to twenty pounds at a time and ten pounds repetitively, but including all the previously described limitations. (Tr. 441). The ALJ asked Mr. Dunleavy if there were any jobs available for such a hypothetical individual. Mr. Dunleavy identified 5,000 assembler jobs, 4,000 packaging jobs, and 2,000 visual inspector jobs in the Chicago metropolitan area that such an individual could perform. (Tr. 441).

The ALJ next asked Mr. Dunleavy whether there would be any jobs that the same hypothetical individual, who has limitations in concentration caused by either medication or anxiety where he would be unable to stay on task as much as fifteen minutes out of every hour, could perform in the national or regional economies. (Tr. 441-42). Mr. Dunleavy responded by stating

7

that there would be no work in either the regional or national economy that such an individual could perform. (Tr. 442). The ALJ further asked Mr. Dunleavy if such an individual, as a result of being anxious around people, was unable to leave the house as much as two days out of a workweek, would be able to perform the jobs he had previously identified. (Tr. 442). Mr. Dunleavy testified that those jobs as well as any other jobs would be eliminated. (Tr. 442).

## V. THE ALJ'S FINDINGS

The ALJ found that Wood had not engaged in substantial gainful activity since March 12, 2001. (Tr. 20). The ALJ determined that Wood has a high school equivalent education and was an individual who fell within the younger age category because he was thirty-four years old at the time of the administrative hearing. (Tr. 19, 21). The ALJ found that the medical evidence established that Wood suffers from severe arthritis and severe anxiety. (Tr. 20). The ALJ determined that Wood did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 21).

Because the ALJ determined that Wood's impairments did not meet or equal a listed impairment, the ALJ assessed Wood's residual functional capacity ("RFC") to determine what he could do despite his limitations. (Tr. 20-21). The ALJ concluded that Wood had the RFC to perform a significant range of sedentary work; however, he could only stand for two hours in an eight-hour workday, could only lift and/or carry up to twenty pounds and lift and/or carry up to ten pounds repetitively, could not have concentrated exposure to noxious fumes, odors or respiratory irritants or extremes of cold, and could only perform simple, repetitive work with no more than superficial contact with the general public. (Tr. 21). The ALJ also found that Wood is unable to perform any of his past relevant work and had no transferrable skills from any past relevant work.

8

(Tr. 21).

Using the Medical-Vocational Guidelines as a framework and as supplemented by the VE's testimony, the ALJ further found that Wood could perform a significant number of jobs existing in the Chicago metropolitan area, including assembler jobs (5,000), packaging jobs (4,000), and visual inspector jobs (2,000). (Tr. 20-21). The ALJ further concluded that Wood's allegations of disabling limitations were not fully credible based on the medical evidence and relevant credibility factors. (Tr. 18-19, 21). Accordingly, the ALJ determined that Wood was not disabled as defined by the Act. (Tr. 21).

## **LEGAL STANDARDS**

### I.  STANDARD OF REVIEW

Section 405(g) provides, in pertinent part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Stevenson v. Chater,* 105 F.3d 1151, 1153 (7th Cir. 1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This Court may not "substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in [the] evidence, or deciding questions of credibility." *Estok v. Apfel,* 152 F.3d 636, 638 (7th Cir. 1998). Where conflicting evidence would allow reasonable minds to differ as to whether a claimant is disabled, the Commissioner has responsibility for resolving those conflicts. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### II.  STATUTORY AND REGULATORY FRAMEWORK

Under the Act, a claimant is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); *see also Jones v. Shalala,* 10 F.3d 522, 523-24 (7th Cir. 1993). To satisfy this definition, a claimant must have a severe impairment that renders him unable to do his past relevant work or any other substantial gainful work that exists in the national economy. *See* 20 C.F.R § 404.1505(a).

In order to determine whether a claimant is disabled, the ALJ follows a five-step analysis outlined in 20 C.F.R. § 404.1520(a)-(f) and considers the following questions in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work in the national economy? *Stein v. Sullivan,* 892 F.2d 43, 44 n.1 (7th Cir. 1990); *see also Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). Thus, "[a]n affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled." *Stein,* 892 F.2d at 44 n.1 (citations omitted). Moreover, "[a] negative answer at any point, other than step 3, stops [the] inquiry and leads to a determination that the claimant is not disabled." *Id.* The claimant bears the burden of proof at steps one through four. *Young v. Secretary of Health and Human Services,* 957 F.2d 386, 389 (7th Cir. 1992). If the claimant meets his burden of proof, then the burden shifts to the Commissioner to establish that the claimant is capable of performing other work in light of his age, education and work experience and that other work exists in the national economy. *Ray v. Bowen,* 843 F.2d 998, 1001 (7th Cir. 1988); *see also* 42 U.S.C. § 423(d)(2)(A).

# ANALYSIS

Wood raises two main challenges to the ALJ's decision: (1) the ALJ erred by playing doctor and disregarding the medical expert's opinion and (2) the ALJ ignored relevant medical evidence which was favorable to him. Neither argument warrants a reversal or remand.

Wood first argues that the ALJ erred in determining his mental residual functional capacity. Wood contends that the ALJ's assessment of his mental limitations was flawed because it did not account for Dr. Snyder's testimony that he would have some difficulty sustaining employment. The ALJ found that Wood suffers from anxiety but concluded that he retained the residual functional capacity to perform simple, repetitive work with no more than superficial contact with the general public.

Substantial evidence supports the ALJ's mental residual functional capacity determination. The ALJ's mental RFC finding is consistent with Dr. Snyder's testimony. Dr. Snyder, a psychologist who testified at the hearing, opined that Wood suffered from a generalized anxiety disorder with difficulty concentrating. (Tr. 423; 428). Dr. Snyder found that Wood was mildly limited in his activities of daily living and moderately limited in the areas of social functioning and concentration, persistence, or pace. (Tr. 424). Dr. Snyder noted that Wood had reported episodes of decompensation related to becoming lost while trying to find a particular address. Dr. Snyder opined that due to Wood's anxiety and related concentration problems, he would be limited to performing simple, repetitive work with only superficial contact with the general public. (Tr. 424-25).

The ALJ also relied on the opinion of the state agency psychiatrist Terry A. Travis. Dr. Travis' opinion is consistent with Dr. Snyder's opinion. (Tr. 18). Dr. Travis completed a Mental

11

RFC on October 14, 2001. Dr. Travis did not find Wood markedly limited in any category. (Tr. 306-07). Dr. Travis opined that Wood was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Wood was "not significantly limited" or there was "no evidence of limitation" in the remainder of the mental activity categories. Dr. Travis concluded that Wood could "function at a reasonable and consistent rate within a schedule with most limitations related to his pain. He is able to do unskilled work."[10] The ALJ also noted that an August 2003 telephone report from Wood's family doctor, Dr. Gnap, indicated that Wood's depression was situational and that he had not seen a psychiatrist at that time. (Tr. 18, 296).

Wood argues that the ALJ improperly disregarded Dr. Snyder's opinion on the issue of sustainability. The ALJ did not disregard Dr. Snyder's opinion. Dr. Snyder testified that Wood would have "some difficulty" sustaining employment, "[m]aybe across the week especially." (Tr. 427). "Some difficulty" is not equivalent to an inability to sustain employment. Dr. Snyder's opinion was based on Wood's testimony, Dr. Jacobs' report, and especially the outpatient therapy notes which repeatedly mentioned difficulty concentrating. (Tr. 427-28). Earlier in his testimony, Dr. Snyder opined, among other things, that Wood had moderate limitations in concentration, persistence, or pace but retained the ability to perform simple, repetitive work. (Tr. 424-25). Dr. Snyder's opinion thus accounts for Wood's concentration limitation. The ALJ's finding that Wood can perform simple, repetitive work is the same as Dr. Snyder's finding.

---

[10] Unskilled work is defined as work that requires little or no judgment and involves only simple tasks, which can be learned on the job in a short period of time. 20 C.F.R. § 404.1568(a).

Wood accuses the ALJ of preventing Dr. Snyder from explaining his opinion that Wood would have some difficulty sustaining work "across the week especially." The ALJ is responsible for developing a full and fair record. *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991). Wood makes much of the fact that the ALJ interrupted Dr. Snyder's testimony on the sustainability issue. Wood's argument is without merit. Wood fails to acknowledge the full exchange between the ALJ and Dr. Snyder. The transcript indicates that the ALJ attempted to explore in detail why Dr. Snyder felt Wood would have some difficulty sustaining work across the week. The ALJ asked Dr. Snyder: "Upon what evidence do you base [your opinion]?" (Tr. 427). The ALJ gave Dr. Snyder a chance to respond, and Dr. Snyder stated that his opinion was based on Wood's testimony, Dr. Jacobs' report, and the outpatient therapy notes which repeatedly mentioned difficulty concentrating. (Tr. 427-28). Dr. Snyder then added that difficulty concentrating is a common feature of generalized anxiety. Id.[11] The ALJ's questioning of Dr. Snyder did not deprive Wood of a fair hearing.

Wood also argues that the ALJ improperly ignored the opinion of Dr. Jacobs and the mental status findings made by the treating psychologist at Oak Forest Hospital. Although an ALJ "need not discuss every piece of evidence in the record," he "may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 1993). The ALJ must minimally articulate his analysis of the evidence so this Court can follow his reasoning. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Contrary to Wood's contention, the ALJ considered these lines of evidence. The ALJ also provided the minimal level of articulation required

---

[11] Wood faults the ALJ for failing to mention Dr. Snyder's testimony that difficulty concentrating is a common feature of generalized anxiety. The ALJ found that Wood suffers from anxiety, adequately accounted for Wood's difficulty concentrating, and explained why he found Wood not disabled. Nothing further is required.

13

and the record supports the outcome.

The ALJ expressly mentioned Dr. Jacob's findings. (Tr. 17). The ALJ also mentioned the therapy notes from Oak Forest Hospital. (Tr. 18). The ALJ noted that Wood was taking Seroquel, Xanaz, and Paxil for depression and anxiety as part of his treatment at Oak Forest Hospital. Id. The ALJ further noted that the psychologist at Oak Forest Hospital found Wood has diminished social and occupational functioning secondary to anxiety. Id. The ALJ did not ignore Wood's diagnosis of generalized anxiety disorder. The ALJ found that Wood's anxiety was a severe impairment and that he had limitations resulting from it. (Tr. 17, 18-19).

Dr. Snyder had the opportunity to review the psychotherapy notes from Oak Forest Hospital and Dr. Jacob's report and was present at the hearing. (Tr. 427-28). Dr. Snyder opined that Wood retained the residual functional capacity to perform simple, repetitive work with no extensive reading and no more than superficial contact with the general public. (Tr. 425). The ALJ is entitled to assume that Dr. Snyder included all of Wood's mental limitations in his assessment of Wood's capabilities and was permitted to rely on Dr. Snyder's testimony. The ALJ's residual functional capacity determination is consistent with Dr. Snyder's opinion. (Tr. 19).

Wood points out that the ALJ erroneously stated at the hearing that there is no evidence in the record of concentration difficulty. (Tr. 427). This error is harmless. This Court's review of the ALJ's decision is based on his complete consideration of the evidence in the decision itself, not on his on-the-spot assessment of the evidence at the hearing. The ALJ's ultimate review of the evidence accounted for Wood's concentration difficulties by limiting him to simple, repetitive work. The ALJ's mistake at the hearing was cured by his decision.

14

Wood complains that the ALJ ignored the mental status findings made by Wood's psychologist at Oak Forest Hospital. The ALJ did not err by failing to mention the specific findings of the psychotherapy visits. Again, the ALJ is not required to discuss every piece of evidence. Moreover, the psychotherapy notes do not undermine the ALJ's mental residual functional capacity determination nor do they dictate a finding that Wood's condition is disabling. With the exception of the June 24, 2004 note (Tr. 372) which indicated a worsening of Wood's condition, the treatment notes as a whole indicate that Wood's condition was stable and/or improved (Tr. 372, 374-77, 380, 382-86, 388, 391. For example, the progress note from June 2, 2004 indicates that Wood was feeling better more quickly, feeling less paranoid and anxious, and more able to focus. (Tr. 375).[12] On June 9, 2004, the psychologist noted that Wood's insight was improving and his mood was more positive. (Tr. 376). The two most recent progress notes in the record from July 13 and 21, 2004 indicate that Wood had made a list of potential jobs, researched job training online, and came up with the idea of working second shift. (Tr. 372, 388). Moreover, the psychologist did not issue any specific work-related restrictions based on Wood's condition. The ALJ thus reasonably accommodated the psychologist's findings of generalized anxiety disorder limiting social and occupational functioning by restricting Wood to simple, repetitive work with no more than superficial contact with the general public.

Wood further claims that the ALJ improperly ignored the psychologist's entries that Wood was unable to work. (Tr. 384, 387). The ALJ did not err in disregarding the psychologist's statements on two occasions (March 8 and March 29, 2004) that Wood was unable to work. As the Commissioner argues, it is not clear whether these entries reflect the psychotherapist's opinion or

---

[12] Wood began taking Paxil on May 25, 2004. (Tr. 376).

Wood's subjective complaints to his psychotherapist. Even if the statements are the psychotherapist's opinion, a claimant is not disabled simply because his treating physician says so. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). "The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." Id. (*quoting Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)). Moreover, the psychotherapist did not indicate that Wood was unable to work in the fifteen other progress notes. (Tr. 372-78; 380-83; 385-86; 388; 391).

Finally, Wood's claim that the ALJ ignored the treating psychiatrist's diagnosis of panic disorder and post-traumatic stress disorder is incorrect. Wood's treating psychiatrist noted only that diagnoses of panic disorder and post-traumatic stress disorder could not be ruled out, but he did not give a definitive diagnosis. (Tr. 370 - "? Panic/PTSD" and Tr. 389 - "R/o Panic/PTSD").

## CONCLUSION

For these reasons, the ALJ's decision denying Wood's application for benefits is affirmed. Wood's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff pursuant to Federal Rule of Civil Procedure 58.

**E N T E R:**

_____
**Nan R. Nolan
United States Magistrate Judge**

**Dated: November 30, 2006**